### IRWIN–HODSON CO., Inc., v. GEO. PRIMBS & SONS, Inc.

(Circuit Court of Appeals, Ninth Circuit. March 3, 1924. Rehearing Denied April 7, 1924.)

#### No. 4157.

Patents ⟨key⟩328—1,371,573, for banking forms, held void for lack of invention.

The Primbs patent, No. 1,371,573, for improvement in banking methods, consisting of a key-numbered blank or form to be used in returning dishonored checks, *held* void as a combination of old and well-known elements, which does not disclose invention.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by Geo. Primbs & Sons, Inc., against the Irwin-Hodson Company, Inc. Decree for complainant, and defendant appeals. Reversed.

T. J. Geisler and John C. McCue, both of Portland, Or., for appellant.

Ridgway, Johnson & Montgomery, of Portland, Or., and R. W. Jones, of Pocatello, Idaho (Albert B. Ridgway, of Portland, Or., of counsel), for appellee.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This was a suit for infringement of letters patent No. 1,371,573. Infringement is admitted by the defendant, if the patent itself is valid, so that we are only concerned with the latter question. The validity of the patent was upheld by the court below, and the defendant has appealed.

The patent relates to means for the simplification of banking methods, consisting of a key-numbered blank, or form, to be used in connection with dishonored checks returned by a bank for one reason or another. The form is provided with a space containing the various reasons that may exist for the nonpayment of checks presented to a bank for payment; each reason being provided with a key-number. It also contains spaces for inserting the name of the bank upon which the check was drawn, the name of the person by whom drawn, the key-number, referring back to the specific reason for dishonoring the check, and the amount of the check. All these elements are confessedly old.

Thus the Wise patent, No. 934,643, is for an advertising device, consisting of an advertising sheet containing a number of advertise-

ments, with reference characters attached, associated with a certificate containing like reference characters, corresponding to the reference characters on the advertising sheet. The Moody patent, No. 1,291,077, relates to an improvement in a universal check. The check contains the names of a number of banks, each bearing a number, and the particular bank upon which the check is drawn is designated by the appropriate number. The Dow and Curtis form is designed for the return of a single dishonored check or item. The form contains a similar list of reasons for the return of the check, but the particular reason is designated by a check mark.

We agree with the court below that the form here in question differs from and is not foreshadowed by any of the forms or devices to which we have referred; "yet the question of fact remains whether all this reveals invention, or whether it was no more than the skill of a mechanic plus the taste of a good salesman." Harmon Paper Co. v. Prager (C. C. A.) 287 Fed. 841, 844. On the one hand, we have the presumption of novelty which attaches to every patent; we have a new form or blank, possessing some degree of novelty; we have a time-saving device, and to some extent we have commercial success. All of these are potent factors, but none are controlling. On the other hand, we have a simple form, made up of old and well-known elements, and every change in forms and business methods does not come within the purview of the patent laws. As said by the court in Atlantic Works v. Brady, 107 U. S. 192, 200, 2 Sup. Ct. 225, 231 (27 L. Ed. 438):

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers, who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

The question of invention is one of fact, but in cases such as this it is largely a matter of opinion. The chief, if not the only, novelty or utility about the device in question, is the fact that it enables a bank to return several checks on a single form, thus saving time, labor, and stationery. The case is close to the border line, but in the present state of the art we are of opinion that the mere adoption or use of a key-number to indicate the reasons for the return of a check might readily occur to any ordinary bank clerk or stationer, and does not rise to the dignity of invention.

The decree is therefore reversed.